IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| MARK DREWS and TEDDY DREWS, husband and wife; and CASEY DREWS, a minor, | ) ) ) | CASE NO. CV04-388-N-EJL |
| Plaintiffs, | ) | MEMORANDUM ORDER |
| vs. | ) | |
| | ) | |
| JOINT SCHOOL DISTRICT NO. 393, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Pending before the Court in the above-entitled matter is Defendants' Motion for Summary Judgment (Docket No. 24).  The matter is now fully briefed.  Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument.

Standard of Review

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure.  Rule 56 provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

The Supreme Court has made it clear that under Rule 56 summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to the non-moving party's case and upon which the non-moving party will bear the burden of proof at trial. See, Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986). If the non-moving party fails to make such a showing on any essential element, "there can be no `genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.[1]

Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine." An issue is "material" if it affects the outcome of the litigation. An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975) (quoting First Nat'l Bank v. Cities Serv. Co. Inc., 391 U.S. 253, 289 (1968)). The Ninth Circuit cases are in accord. See, e.g., British Motor Car Distrib. v. San Francisco Automotive Indus. Welfare Fund, 882 F.2d 371 (9th Cir. 1989).

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party

---

[1] See also, Rule 56(e) which provides, in part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

MEMORANDUM ORDER - Page 2

(1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

Id. at 374 (citation omitted).

Of course, when applying the above standard, the court must view all of the evidence in a light most favorable to the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Hughes v. United States, 953 F.2d 531, 541 (9th Cir. 1992).

Factual Background

Casey Drews ("Casey") and her parents, Mark and Teddy Drews, filed a Complaint in federal court on July 29, 2004, against the Joint School District No. 393, Reid Straabe, in his capacity as Superintendent of Joint School District No. 393, Gail Harding-Thomas, in her capacity as Principal of Wallace Jr./Sr. High School and John Does 1-5, in their capacity as Board of Trustees of Joint School District No. 393.[2]  At the time the Complaint was filed, it is undisputed that Plaintiff Casey Drews had reached the age of majority.

The Complaint alleges the jurisdiction pursuant to 42 U.S.C. §§ 1981 and 1983, et. seq. and

---

[2]The Complaint filed by Plaintiffs is a confusing document as to the causes of action, the specific rights alleged to have been violated and to the capacity in which the Defendants are being sued.  In the opening paragraph of the Complaint, its states the complaint against the defendants "individually and in their official capacities," but the remainder of the Complaint refers to Defendant Straabe, Harding-Thomas and the Board of Trustees in their official capacities, not individually.  Nor is there any allegation in the Complaint that the individually named Defendants were acting in their individual capacity and not in their official capacity.  On page 4 of Plaintiffs' Memorandum in Opposition to Motion for Summary Judgment, Docket No. 36, Plaintiffs state: "However, because Principal, Gail Harding-Thomas is being sued in her official capacity, qualified immunity is not available."   Accordingly, based on the admissions contained in pleadings, the Court finds the claims against the individual Defendants are solely in their official capacities.

MEMORANDUM ORDER - Page 3

Title IX, Education Amendments of 1972, §§ 901-909, as amended, 20 U.S.C. §§ 1681, et. seq.

Plaintiffs claim four causes of action in their complaint.  First, a violation of civil and constitutional rights under § 1983 as well as statutes regarding deprivation of rights and discrimination on the basis of sex in violation of Title IX.  The Court assumes based on other statements in the Complaint and other pleadings that the Constitutional rights Plaintiffs are alleging were violated were substantive due process, equal protection and Second, the actions of the Defendants resulted in a denial of education.[3]   Third, Plaintiffs alleges the Defendants were negligent by failing in their duty to protect, supervise and educate Plaintiff.[4]   Fourth, Plaintiffs allege Casey Drews was subjected to a "hostile educational environment" in violation of Title IX claiming administrators and the Board of Trustees were deliberately indifferent to Casey Drews' protected right to be free from abuse or harassment and Casey was excluded from participation in and denied benefit of and/or was subjected to discrimination under an educational program receiving federal financial assistance.  Then in the Prayer for Relief, Plaintiffs seek to have this Court declare that Defendants violated Plaintiff's[5] substantive due process and equal protection rights under the United States and Idaho Constitutions and Plaintiff's rights under the Family Educational Rights and Privacy Act as set forth 20 U.S.C. § 1232g (however no cause of action related to this Act was set forth in the Complaint).   Then, in Plaintiffs' five and half page memorandum in opposition to the motion for summary judgment,

---

[3]Under what statutes the denial of education claim arises is not designated in the complaint.

[4]On page 4 of the Complaint, Plaintiffs allege their causes of action include, but are not limited to:  negligence per se, negligence, breach of fiduciary duty, the deprivation of constitutional rights pursuant to § 1983 and Title IX.  However, the third cause of action is limited to negligence and does not include a claim for negligence per se.

[5]Plaintiffs' counsel uses the term "Plaintiff's" singular, but the Court cannot determine which of the three named Plaintiffs counsel is referring to or if counsel has made a clerical error and means "Plaintiffs'."

MEMORANDUM ORDER - Page 4

Plaintiffs claim that Casey Drews has the "constitutional right to be free from discrimination on the basis of her sexual orientation or perceived sexual orientation" although this description of her Title 9 or § 1983 claim was not described as such anywhere in the Complaint.   Plaintiffs seek compensatory damages and past and future expenses for education, medical, emotional, psychiatric treatment and/or counseling.   The Defendants deny all causes of action and move for judgment in their favor as a matter of law.

Plaintiff Casey Drews alleges that she was harassed at school by other students as well as non-students (former students)  and that the harassment led her to changing schools.  Some of the alleged harassment was reported to school officials, some was not reported.  Some of the alleged harassment occurred on Wallace School Jr./Sr. High School grounds and some did not.  Casey attended high school in the Wallace School District during her freshman, sophomore and junior years from the fall of 2000 to the spring of 2003.  In her senior year, Casey attended high school in Montana, then Coeur d'Alene High School, but graduated from Mullan High School when it was determined she did not meet the residency requirements for Coeur d'Alene High School.  Casey did well in school and graduated with a 3.83 cumulative grade point average.  Casey continues to do well in college at North Idaho College.

The record reflects the alleged harassment began in Casey's sophomore school year 2001-2002.  The first incident of alleged harassment was in the winter of 2002 when some senior girls on the girls basketball team threatened to beat Casey up if she did not quit the team because the older girls did not like a particular friend of Casey's.   The matter was reported to the Coach.  The Principal at the time, Ron McCracken, spoke to the senior girls involved and things seemed to improve.  Mrs. Drews testified in her deposition that boyfriends of the senior girls who threatened

MEMORANDUM ORDER - Page 5

her daughter called her daughter names, but by the time this harassment was reported to the Principal, it had stopped.

At the Junior prom in the spring of 2002, Casey claims fellow student, Seth Drew, grabbed her by the neck and pushed her against the wall.  Casey's brother intervened and a fight ensued. Casey left the dance and went home very upset.  The dance chaperones broke up the fight.  Casey filed a police report against Seth.  The matter was also investigated by the Principal at the time with Seth claiming Casey had been teasing him about his criminal problems and that is why he confronted her.  Casey denies discussing Seth's criminal problems and that he was a friend, so she was surprised when he grabbed her at the prom.  Casey claims students at school were mad at her as they thought she was getting Seth into more trouble.  Dominick Dire threatened Casey to keep her mouth shut or he would break her jaw.  Casey had a letter on her locker that said "Everybody hates you.  All the seniors hate you."  Casey claims the same type of verbal  harassment was repeated every day until the seniors graduated.  Some of this harassment was reported to Principal McCracken.  Casey claims that the Principal said to take a long walk and if she could not handle it to go home.  Plaintiffs do not know what disciplinary action was taken, if any, toward the students Casey reported were harassing her.

Gail Harding-Thomas became Principal of Wallace Jr./Sr. High School during the 2002-2003 school year.  The Principal was aware of Casey's issues the previous year and investigated claims made by Casey and claims about Casey being an instigator of inappropriate conduct at school.  The Principal had many telephone conversations with Casey's parents.  The Principal had many meetings with Casey.  At some point, Mrs. Drews claims the Principal stopped taking her phone calls, so she had her husband call instead to complain about the harassment Casey was experiencing.

MEMORANDUM ORDER - Page 6

In the fall of 2002, there was an incident where Casey was overheard on her cell phone indicating she would kick a certain student's ass.  Casey and the other girl were taken to the Principal's office and the issue was discussed with the Principal and the Cheerleader advisor.

The Principal also received complaints from other students that Casey spoke badly about others and used profanity.  When instances of harassment occurred and were reported to the Principal, the students involved would be interviewed by the Principal and the Principal would attempt to have the students work out their differences.

Casey was on the Cheerleading squad.  Seth Drew's girlfriend was the captain of the squad. Casey felt excluded on the squad, but stated the advisors really helped her.  Casey ended up quitting the cheerleading squad as she did not believe certain dance moves were appropriate.  The Principal reviewed the dance moves and said they were okay and if Casey did not want to participate in the dance moves she could voluntarily stop cheerleading.

Principal Harding-Thomas' background includes counseling experience.  In October of 2002, she decided that a group of girls who were not getting along would benefit from reading and discussing the book "Odd Girl Out."  Copies of the book were purchased by the Principal and sessions discussing the book and female relationships were led by school staff.  The purpose of the book discussion was to educate the women regarding behavior and relationships.

Sometime after the junior prom in the spring of 2002, Casey's Mom took a picture of Casey and her friend Gretchen kissing.  Casey claims the picture was taken when they were goofing off and as a result of Madonna and Brittany Spears kissing on TV at a music awards ceremony.  A copy of the picture was taken from Casey's house (presumably by her prom date) and ended up in the hands of others who posted the picture on the internet along with remarks about Casey's sexual

orientation.  Additionally, the Plaintiffs allege copies of the picture with remarks were handed out at school.  The Principal was provided a copy of the picture by Casey or her mother at a basketball game in the winter of 2002-2003.  The Principal remembers Casey questioned the legality of posting such a picture on the internet and the Principal discussed the matter with the school resource officer. While Casey's mother maintains the Principal knew the photos were being handed out at a basketball game, the Principal testified she was given the picture at a basketball game, but was not aware the picture was being handed out at the basketball game.  The boy who disseminated the picture was not a Wallace School District student.  The Drews admit the school district defendants had nothing to do with the creation or dissemination of the photo taken by Mrs. Drews.

Casey claims, due to the picture being disseminated on the internet between students, she was harassed about being a lesbian.  Casey states: "Everyone knew that I wasn't a lesbian." Casey does not allege the school district personnel called her a lesbian or that the school district officials believed she was gay.  Casey claims she quit the basketball team as girls would not sit by her on the bus, undress around her, hung pictures on her locker, and one girl called her "a f___ing, lesbian, whore."  It is unclear in the record the extent of this alleged sexual verbal harassment by the girls on the basketball team that was reported to school officials.

The Plaintiffs also complain that the Athletic Director who is also a teacher, Mr. David Rounds, made inappropriate comments about Casey in his classroom when Casey was not present. Mr. Rounds was deposed and his testimony established that he was asking why Casey didn't stay at the sports awards banquet as she had earned certain awards.  Casey complained to the Principal as she had heard from another parent that Mr. Rounds had said she did not appreciate the awards or respect the awards she had earned.  The Principal had the school resource officer investigate the

allegations against Mr. Rounds, and the allegations were not confirmed.  Mr. Rounds did not know

the reason Casey had to leave the banquet, but the investigation and the deposition of Mr. Rounds

indicate he did not make derogatory remarks about Casey in his classroom only that he thought it

was strange someone would not stay to receive an award they had worked hard to earn.  It is

undisputed that the parent that called the Drews was not present in the classroom at the time Mr.

Rounds made his statement regarding the awards banquet.  Accordingly, the Court puts little weight

on this allegation of harassment based on double hearsay and to which Mr. Rounds was deposed and

testified no disparaging remark was made, only a question asked.  The Plaintiffs did not respond

with a rebuttal affidavit, so the record does not support this claim surviving summary judgment as

there are no disputed issues of fact regarding what occurred in the classroom.

     At some point in the spring semester of 2003, Casey requested to withdraw from a science

class alleging she was being harassed by students in the class.  The Principal investigated the

allegations with the teacher of the class and students in the class.  The teacher was not aware of the

alleged harassment allegation and did not know why Casey wanted to withdraw.  The other students

did not substantiate the harassment claims.  The Principal, did however, allow Casey to withdraw

from the class and substitute a self-directed study course supervised by one of the school counselors

to replace the credit hours.  Casey testified in her deposition she enjoyed the self-directed study.

     Casey also complains the school district did not take proper steps to remove non-students

from the school.  In response to a complaint by the Drews that non-students should not be allowed

to sit in the student section of the bleachers as they were allegedly verbally harassing Casey, the

Principal had signs made so only current students could sit in the student section of the bleachers

for sports events.  In response to a complaint about Seth Drew, his recruiting privileges were

revoked for the high school.  In response to a complaint about Dominick Dire, the school resource officer informed Mr. Dire that as a former student, he could no longer be on campus without permission.    In February 2003, the Principal arranged for professional mediators to come to the school to deal with issues relating to Casey with the students and their families.  The mediators talked with the Drews prior to the mediation, but the Drews elected not to attend the mediation as they did not want Casey to feel responsible for the alleged harassment. The participants at the mediation reported the process was helpful.

Casey started her senior year, 2003-2004 in Montana and then moved back to Coeur d'Alene. Casey also alleges Mr. Rounds, as Athletic director interfered with her ability to play basketball her senior year at Coeur d'Alene High School.  Mr. Rounds testified in his deposition that he heard Casey was back and contacted Coeur d'Alene High School in order to complete the necessary paperwork to allow her to play at Coeur d'Alene.  Mr. Rounds testified he contacted Coeur d'Alene so that school would not get in trouble for failing to complete the requisite paperwork.  Nothing in the record supports Casey's allegation that Mr. Rounds was trying to prevent Casey from playing basketball at Coeur d'Alene or Mullan.  Mr. Rounds had no involvement with Coeur d'Alene High School determining that Casey did not meet the residency requirements for Coeur d'Alene.  Casey then transferred to Mullan High School.

Casey alleges she was harassed when she played basketball for Mullan High School by Wallace School District students during her senior year.  It is undisputed this alleged harassment did not take place on Wallace school district property and it was not reported to the Wallace High School  Principal.  Casey claims the alleged harassment was reported to school officials at Mullan however, Mullan school officials are not defendants in this case and any claim of deliberate

indifference on the part of Mullan High School officials cannot be the liability of the Wallace School District.

The student handbook sets forth possible disciplinary action that can be taken by school officials for inappropriate conduct. Principal Harding-Thomas testified she had discretion in disciplining students and that the discipline of other students was not reported to the Drews family as such information is confidential. The Principal's strategy was to try to have the kids work out their problems versus suspending kids from school.

Analysis

The Court finds it is undisputed that some level of student to student harassment and non-student to student harassment occurred in this case. This case is a sad case of kids being mean to other kids. The question for this Court now becomes, did the Defendants, in trying to respond to the complaints of harassment by Plaintiffs, violate Casey's civil rights or other duties owed to the Plaintiffs?

1. Are Plaintiffs' § 1983 Claims Subsumed in the Title IX Claims?

It appears that Plaintiffs are arguing the same alleged harassment satisfies both violations under § 1983 and also under Title IX. While this issue has not been addressed by the Ninth Circuit,[6] a majority of the circuits agree that Title IX provides a sufficiently comprehensive form of remedies to subsume § 1983 actions based on the same conduct. The Second, Third, Fifth, and Seventh

---

[6]The Ninth Circuit determined it did not have pendent jurisdiction to resolve the question of whether a school counselor could be sued for Title IX violation under § 1983 in <u>Doe v. Petaluma</u>, 54 F.3d 1447 (9th Cir. 1995) as the Court held the counselor was entitled to qualified immunity.

MEMORANDUM ORDER - Page 11

Circuits find a Title IX claims subsumes § 1983 claims.[7]  The Sixth, Eighth, and Tenth Circuits have

allowed § 1983 constitutional rights claims to proceed independent of Title IX claims.[8]  In reviewing

the cited cases, as well the Supreme Court decision in <u>Franklin v. Gwent Count Public Schools</u>, 503

U.S. 60(1992), this Court finds persuasive the argument that Title IX provides "sufficiently

comprehensive" remedial devices in that it allows a Plaintiff to recover equitable as well as money

damages under Title IX, that it precludes remedies also under § 1983.

      To the extent that Plaintiffs' argue that Casey's claim under § 1983 is different than her Title

IX claim, the Court finds Plaintiffs have failed to establish a unique § 1983 claim.  Plaintiffs attempt

to argue in their response brief that Casey was discriminated against based on her perceived sexual

orientation.  This § 1983 claim must be dismissed as Plaintiffs have failed to establish facts that

Casey was discriminated against based on her sexual orientation.

      The purpose of 42 U.S.C. § 1983 is to deter state actors from using the badge of their

authority to deprive individuals of their federally guaranteed rights and to provide relief to harmed

parties.  <u>See</u> <u>Wyatt v. Cole</u>, 504 U.S. 158, 161 (1992).  To state a claim under § 1983 against the

Principal or the superintendent, a plaintiff must allege facts which show a deprivation of a right,

privilege or immunity secured by the Constitution or federal law by a person acting under color of

state law.  <u>Id.</u>   Acting under color of state law is "a jurisdictional requisite for a § 1983 action."

<u>West v. Atkins</u>, 487 U.S.  42, 46 (1988).  Section 1983 is a remedial statute which does not create

---

[7]<u>See</u> <u>Bruneau v. South Kortfight Central School Dist.</u>, 163 F.3d 749 (2nd Cir. 1998); <u>Pfeiffer v. Marion Center Area School Dist.</u>, 917 F.2d 779 (3rd Cir. 1990); <u>Lakoski v. James</u>,66 F/3d 751 (5th Cir. 1995); <u>Waid v. Merrill Area Public Schools</u>, 91 F. 3d 857 (7th Cir. 1996); <u>Boulahanis v. Board of Regents</u>, 198 F.3d 633 97th Cir. 1999).

[8]<u>See</u> <u>Lillard v. Shelby County Board of Educ.</u>, 76 F.3d 716 (6th Cir. 1996); <u>Crawford v. Davis</u>, 109 F.3d 1281 (8th Cir. 1997); <u>Seasons v. Snow</u>, 84 F.3d 1226 (10th Cir. 1996).

MEMORANDUM ORDER - Page 12

substantive rights, but rather provides a remedy for violations of rights created in the Constitution or other statutes.  Day v. Wayne County Bd. of Auditors, 749 F.2d 1199 (6th Cir. 1984).   In this case, it is not disputed that the school officials and school district were acting under color of state law when Casey reported harassment to the Principal. Therefore, the question becomes, did the Principal's actions deprive Casey of a right, privilege or immunity secured by the Constitution or federal law?  In order to prevail in a § 1983 claims against the school district, Casey must establish:

> 1) she was deprived of her constitutional rights by the School District and its employees, acting under color of state law;
> 2) that the School District had policies or customs which amount to deliberate indifference to her constitutional rights; and
> 3) these policies or customs are the moving force behind the alleged constitutional violations.

Lee v. City of Los Angeles, 250 F.3d 668, 681-82 (9th Cir. 2001).

In their response brief to the motion for summary judgment, Plaintiffs argue "Casey Drews has the constitutional right to be free from discrimination on the basis of her sexual orientation or perceived sexual orientation." See Memorandum in Opposition to Defendants' Summary Judgment, Docket No. 36, p. 3.   The Court agrees that at the time of the alleged harassment, Casey had a right to be free of discrimination on the basis of her sexual orientation or perceived sexual orientation. The question then becomes, did the school officials act with deliberate indifference regarding Casey's allegations of harassment because of Casey's sexual orientation or perceived sexual orientation?  Casey has not submitted facts that support that she was discriminated against by school officials in investigating her complaints of harassment based on her sexual orientation or perceived sexual orientation.

Plaintiffs cite the Court to Flores v. Morgan Hill Unified School District, 324 F.3d 1130 (9th Cir. 2003), wherein gay plaintiff students alleged equal protection violations pursuant to 42 U.S.C.

MEMORANDUM ORDER - Page 13

1983 based on student anti-homosexual harassment and the fact that school officials were deliberately indifferent to the harassment.  The court held there existed clearly established law that homosexuals were a definable minority and that the constitutional violation in <u>Flores</u> was based on the discriminatory enforcement of the policies.  In <u>Flores</u>, school officials did not "enforce District policies in cases of peer harassment of homosexual and bisexual students in the same way that they enforce those policies in cases of peer harassment of heterosexual students." <u>Id.</u> at 1137.  Casey does not claim her equal protection rights were violated because school officials did not enforce the peer harassment rules the same way for homosexual students versus peer harassment of heterosexual students.  Casey admits she is not a lesbian and that the students knew she was not a lesbian.  Therefore, if Casey's claim is the school officials were deliberately indifferent to her complaints of harassment based on her perceived sexual orientation, such a claim is without factual support.  Plaintiffs have also failed to provide any evidence that  there was a custom or policy to discriminate against gay students or whether such a policy was the moving force behind the alleged violation of rights.   For these reasons, Casey's arguably unique § 1983 claim based on her perceived sexual orientation is denied as a matter of law.  Casey's broad claim for deliberate indifference to the alleged sexual harassment is subsumed in the Title IX claim.  Accordingly, the § 1983 claims must be dismissed.


2.  Title IX Claims.

For student to student sexual harassment, the four requirements for imposition of school district liability under Title IX are:


MEMORANDUM ORDER - Page 14

> (1) the school district "must exercise substantial control over both the harassed and the context in which the known harassment occurs", (2) the plaintiff must suffer "sexual harassment . . . that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school", (3) the school district must have "actual knowledge of the harassment", and (4) the school district's "deliberate indifference subjects its students to harassment."

Heckle v. Gregory, 150 F. Supp 2d 1067, 1077-78 (D. Nevada 2001) (citing Reese v. Jefferson School District No. 14J, 208 F.3d 736, 739 (9th Cir. 2000).

Taking all of Plaintiffs' complaints about harassment into consideration, the Court finds the School District did have substantial control over certain of Casey's alleged harassers: seniors on girls' basketball team, Seth Drew at the time of the prom incident, and boyfriends of seniors verbally harassing Casey during her sophomore year. Non-students accessing the schools or attending sporting events would be within the control of the school district as long as such sporting event was taking place at the Wallace High School or Wallace High School students were competing at another school. The allegations involving Wallace students harassing Casey her senior year when she was playing basketball for Coeur d'Alene or Mullan High School did not involve instances where the Wallace School District had substantial control over the alleged harassers. The allegations stemming from the dissemination of the picture of Casey kissing another girl involved individuals who the school did not have substantial control over and cannot be a basis for sexual harassment. The alleged sexual harassment by the basketball team her junior year resulting in part from the picture of Casey would involve students the school had substantial control over.

MEMORANDUM ORDER - Page 15

The second factor Casey needs to establish is that the sexual harassment she suffered was so severe, pervasive, and objectively offensive that it deprived Casey of access to the educational opportunities or benefits provided by the school.  Even assuming the sexual harassment by students over which the school exercised control occurred was "severe, pervasive and objectively offensive," Casey was not deprived educational opportunities or benefits provided by the school.  While it is true, Casey voluntarily withdrew from a science class based on alleged harassment by other students, this allegation was investigated by the school officials and the harassment was not verified by the teacher or other students.  Nor was the alleged harassment determined to be "sexual harassment." Regardless, the Principal allowed Casey to withdraw from the class and take a self-directed study which Casey testified she enjoyed.  It is undisputed Casey voluntarily quit the cheerleading squad after she personally found certain dance moves too suggestive.  It is also important to note, Casey's quitting of the cheerleading squad was not alleged to have been based on "sexual harassment" by the other cheerleaders although Casey claims she felt "excluded" on the cheerleading squad.  The only possible argument that could survive on the summary judgment motion is that Casey was forced to quit the basketball team her junior year and in this way she was denied a benefit provided by the school.

The third factor is the school district must have actual knowledge of the sexual harassment. It is undisputed that many alleged harassment issues were reported to the Principal.  However, Casey and her parents acknowledged in their deposition testimony that not all harassment was reported to the Principal or other school officials.  Therefore, genuine issues of material fact exist regarding what harassment was reported and acted upon by school officials and what harassment was not

reported and due to the lack of knowledge of the harassment, the school officials cannot be held liable.

The fourth factor is the school district's "deliberate indifference subjects its students to harassment."   While the Court has examined the cases cited by the parties which usually involve much more serious allegations of harassment, the Court finds, as a matter of law in this case, genuine issues of material facts exist concerning whether the school district defendants acted with deliberate indifference during Casey's sophomore and junior year.

The Ninth Circuit has defined "deliberate indifference" as "the conscious or reckless disregard of the consequences of ones acts or omissions." Redmon v. County of San Diego, 942 F.2d 1435, 1442 (9th Cir. 1991).   Deliberate indifference may be established where a school administrator "respond[s] to known peer harassment in a manner that is . . .clearly unreasonable." Davis v. Monroe County Bd. Of Educ., 526 U.S. 629, 649 (1999).  To survive summary judgment on the issue of motive on the part of school officials, the Plaintiffs must "put forward specific, nonconclusory, factual allegations' that establish improper motive." Jeffers v. Gomez, 267 F.3d 895, 907 (9th Cir. 2001) (quoting Crawford-El v. Britton, 523 U.S. 574, 598 (1998)).

The Court has compared the factual scenario of this case with the facts of the cases cited by the Plaintiffs.   There is simply no comparison to the cases in which the court found deliberate indifference to the sexual harassment.   The first case cited by Plaintiffs, Davis v. Monroe County Board of Education, 526 U.S. 629 (1999) involved prolonged sexual harassment by a fifth grade classmate who attempted to touch the breasts and genital area of the victim and stated he wanted to "get into bed" with the victim.   The incidents were reported to the teacher and the Principal and no action was taken.   Additional, sexually harassment was reported to teachers and nothing was done.

MEMORANDUM ORDER - Page 17

The harassing student pleaded guilty to sexual battery for his misconduct although the victim alleges the school officials did nothing to stop the harassment over the course of five months even when other students also complained of sexual harassment by this student.  The Supreme Court held that Title IX does provide for a private right of action and money damages for student on student sexual harassment and that the case should not have been dismissed by the trial court.  This Court agrees there is a private cause of action, but the nature of the harassment alleged in the case at bar is not of the same degree of severity and pervasiveness as in <u>Davis</u> and the alleged harassment was not ignored by school officials.

In this case, the record indicates the school officials were proactive in investigating alleged harassment.  During her sophomore year, the Principal, at the time, talked with the basketball team and no further problems were reported to the Principal.  During her junior year, the new Principal regularly investigated allegations of harassment and discipline was taken against responsible parties.  Such discipline was confidential and was not disclosed to the Drews. Moreover, the Principal started the girls only study discussion group of "Odd Girl Out" to help girls deal with relationships.  The Principal changed the signs for sporting events so only current students could sit in the student section of the bleachers, the Principal allowed Casey to complete a directed study and withdraw from a science class, the Principal had the allegation of a teacher/athletic director speaking badly about Casey in class investigated, the Principal did not allow Seth Drew to enter the school for recruiting purposes, the Principal changed the policy regarding non-student access to the school, and the Principal arranged for mediators to come to the school to work out differences between certain students, however, Casey and her parents did not attend the mediation.  These are all strong indications that school officials were not deliberately indifferent.  However, for purposes of a

MEMORANDUM ORDER - Page 18

summary judgment motion, the Court must view the facts in a light most favorable to Plaintiffs and it is possible a reasonable juror could find that the actions taken by the school district were ineffective while Casey was at Wallace High School.

Reasonable delay by school officials in dealing with alleged sexual harassment does not equal  deliberate indifference and punishment that does not satisfy the plaintiff does not equal deliberate indifference.  See Oden v. Northern Marianas College, ___ F. 3d ___, 2006 WL 522448 (9th Cir. 2006).  As an example in the case at bar, Plaintiffs allege it took too long for the Principal to remove non-students from the student section at athletic events.  It will be up to a jury to decide if the amount of time the Principal took to respond to the alleged complaints was reasonable.

The Drews' complaint that the discipline of other students was not sufficient does not rise to the level of deliberate indifference on the part of the school district or school officials when the Drews acknowledge they were not informed of the disciplinary actions taken by school officials.  However, the Court does acknowledge that failure to discipline harassing students can be viewed as deliberate indifference.  See Vance v. Spencer County Public School Dist., 231 F.3d 253 (6th Cir. 2000).  In Vance, the appellate court found the evidence was sufficient to establish the board of education was deliberately indifferent to the sexual harassment of a female high school student by other students.  On one occasion, a student's harassing conduct culminated in stabbing plaintiff in the hand, and on another occasion, two male students held plaintiff while another student took off his pants and other pulled her hair and attempted to rip off her clothes.  The harassment continued to the point where the student was propositioned or touched inappropriately in virtually every class. Id. at 257.  The only response by school officials was to talk to the harassing students and no investigation was conducted after the mother filed a detailed complaint with the school district's

MEMORANDUM ORDER - Page 19

Title IX coordinator.   The facts of <u>Vance</u> are clearly distinguishable from the facts in the case at bar, but the Court finds genuine issues of material fact exist regarding whether the response by school officials was timely and reasonable.

As far as Casey's senior year, the Court does finds as matter of law that the school officials were not deliberately indifferent.   The Principal was not aware of the alleged harassment at Mullan basketball games.   The actions of the athletic director to make sure Casey was eligible to play basketball at her new high school was not deliberate indifference but, concern for Casey being able to compete without the other school being sanctioned, as the Wallace Athletic Director approved of Casey playing at the other area high schools.   Simply put, no reasonable juror could find the actions of school officials involved "the conscious or reckless disregard of the consequences of ones acts or omissions."   Nor does the record create a material issue of genuine fact establishing the actions by school officials were "clearly unreasonable."   For these reasons, allegations regarding harassment Casey's senior year shall not be presented to the jury.


3.  Negligence Claim

Plaintiffs third cause of action alleges the Defendants were negligent by failing to take proper steps to protect the health and safety of Casey.   To establish a claim for negligence under Idaho law, the plaintiff must prove:

(1) a duty, recognized by law, requiring the defendants to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual loss or damage.   <u>Hanks v. Sawtell Rentals, Inc.</u> 133 Idaho 199, 203, 984 P.2d 122, 126 (1999).

MEMORANDUM ORDER - Page 20

The Court finds, and the Plaintiffs concede, that Idaho Code § 6-904A prohibits a cause of negligence based on student to student harassment.  In the response to the summary judgment motion, Plaintiffs claim the school district had a duty to protect Casey from being harassed by former students at school and school sanctioned extracurricular events.  Plaintiffs provide no case law that supports their position.  Moreover, the Court finds Plaintiffs have failed to establish the requisite elements to this claim.  The Court will assume, for purposes of the motion for summary judgment, that the School District has a general duty of care to prevent foreseeable harm to its students while the students are in the School District's custody.  <u>Summers v. Cambridge Joint Sch. Dist.</u>, 139 Idaho 953, 956, 88 P. 3d 772, 775 (2004).  The record before this Court is undisputed that school officials did not breach this duty.  School officials took action to limit access of former students to the school, did not allow former students to sit in the student section at athletic events, terminated recruitment access for Seth Drew, had the resource officer talk with Dominick Dire and investigate Casey's complaints against his verbal harassment, trained office personnel to require visitors to the school to sign in.  Plaintiffs failed to respond to the motion for summary judgment with facts that the actions taken by school officials toward non-students resulted in a breach of the general duty of care.  As to the alleged harassment at Mullan basketball games, there is no evidence the alleged harassment was ever reported to Wallace school officials.  Finally, Plaintiffs have failed to establish a causal connection between the Defendants' conduct of limiting access of non-students and the resulting injury was foreseeable to the Wallace School District Defendants.  As a matter of law, summary judgment is granted in Defendants' favor on this claim.

4.  Denial of Education Claim

The third cause of action was not responded too in Plaintiffs memorandum in opposition to summary judgment.  District Courts may establish local rules of procedure that have the force of law.  Fed. R. Civ. P. 83(a)(1).  Attorneys practicing in a federal district court are charged with knowledge of the local rules the same as they are charged with knowledge of the Fed. R. Civ. P. Local Rule 7.1 controls when a response must be filed to a motion.  Pursuant to D. Idaho L. Civ. R. 7.1(c), the responding party must file its response within twenty-one days after service upon the party of the motion and memorandum by the moving party.[9] The Local Rules provide that failure to respond to a motion may be deemed consent to the granting of the motion.  D. Idaho L. Civ. R. 7.1(f).

However, pursuant to <u>United States v. Real Property Located at Incline Village</u>, 47 F.3d 1511, 1520 (9th Cir. 1995) default summary judgment is not proper unless movant's papers are sufficient to support the motion or on their face the movant's papers reveal no genuine issue of material fact.  <u>See</u> also <u>Marshall v. Gates</u>, 44 F.3d 722, 725 (9th Cir. 1995) (summary judgment may not be granted simply because opposing party violated a local rule, if movant did not meet burden of demonstrating absence of genuine issue for trial).  Accordingly, the Court will evaluate the

---

[9]D. Id. L. Civ. R. 7.1(c)(1) provides in part:

The responding party <u>must</u> serve and file a response brief . . . . The responding parties must serve and file with the response brief any affidavits, copies of all photographs, and documentary evidence on which the responding party intends to rely.  (Emphasis added.)

motion for summary judgment on the merits even though Plaintiffs failed to address the claim in their responsive pleading.

Every student is entitled to free appropriate education by the public schools of our country. In this case, Casey elected to voluntarily withdraw from a science class due to alleged harassment. The alleged harassment was reported to the Principal who investigated the allegation with the teacher as well as other students in the class.  The teacher was not aware of the alleged harassment. The students that were contacted did not indicate harassment of Casey was taking place.  However, the Principal allowed Casey to voluntarily withdraw from the class and take a self-directed study course via a school counselor during the class period she normally attended the science class.

Casey's voluntary withdrawal from the class and the substitution of a directed study course, did not deny education to Casey.  The directed study course allowed Casey to earn credit and there is no evidence in the record that Casey was not allowed to participate in certain classes or extracurricular activities.  She was on the basketball team and was a cheerleader until she decided to voluntarily quit such activities.  Casey does not allege in her pleadings that she was denied a free appropriate education because she quit certain extracurricular activities.   Accordingly, Plaintiffs have not provided any facts to support that Casey was denied an education due to alleged harassment and the claims must be dismissed as a matter of law.


5.  Family Educational Rights and Privacy Act as set forth 20 U.S.C. § 1232g

While this may not be a cause of action since Plaintiffs failed to articulate such claim is a cause of action under the Complaint, the Court will address whether summary judgment on Family Educational Rights and Privacy Act as set forth 20 U.S.C. § 1232g is appropriate.  Again, Plaintiffs

MEMORANDUM ORDER - Page 23

failed to respond to Defendants' argument that no evidence of a violation of privacy rights has been shown by Plaintiffs.  There is no allegation that private matters in Casey's educational records were discussed with third parties without the consent of Plaintiffs.  Therefore, the Court finds there are no genuine issues of material fact and summary judgment in favor of Defendants is appropriate as a matter of law on this claim included only in the Prayer for Relief.

     6.  Parents' Claims

     Defendants move to dismiss the claims of Mark and Teddy Drews as Plaintiffs have failed to allege or establish their constitutional rights or rights under Title IX were violated or that any duty owed to them was breached.  Moreover, because their child, Casey, was 18 years old when the complaint was filed, the Defendants maintain the parents do not have standing to seek damages on Casey's behalf.

     It is undisputed that parents have the right to make decisions concerning the care, custody and control of their children.  Troxel v. Granville, 530 U.S. 57, 65-66 (2000).  However, the remaining claim in this case is Casey's claim that her rights were violated pursuant to Title IX and since Casey is an adult, she must bring this action.  Casey's parents have no standing to bring this action as the parents have not established a cause of action under Title IX.  Because  the parents have no remaining causes of action, the Court finds the parents, Mark and Teddy Drews must be dismissed as plaintiffs in this action a matter of law.

ORDER

     Being fully advised in the premises, the Court hereby orders that the Defendants' motion for summary judgment (Docket No. 24) is GRANTED IN PART AND DENIED IN PART.  All claims except Casey Drews' Title IX claims are dismissed as a matter of law.

Moreover, the parents, Mark and Teddy Drews,  are dismissed as Plaintiffs in this action.

The trial remains set for May 9, 2006.

**SO ORDERED.**

DATED:  **March 29, 2006**

Honorable Edward J. Lodge
U. S. District Judge